UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BURLINGTON INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV96-S-3214-NE |
| | ) | |
| MAPLES INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **ENTERED** |
| | ) | |
| BURLINGTON INDUSTRIES, INC., | ) | MAR 2 7 1998 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV97-S-2479-NE |
| | ) | |
| MAPLES INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

I. INTRODUCTION

A.   The Arkansas Action

The second of the two actions referenced above, CV-97-S-2479-NE, actually was the first to be filed.  It was commenced in the United States District Court for the Eastern District of Arkansas on November 3, 1994.[1]  For clarity, it will be referred to hereafter as "the Arkansas action."

Jurisdiction in the Arkansas action was premised upon diversity of citizenship, and Burlington claimed misappropriation of trade secrets and tortious interference with contractual

---

[1]The action was denominated by that court Civil Action No. PB-C-94-664.

relationships in violation of Arkansas law. The Arkansas district court entered partial summary judgment in favor of Burlington. (*See* Doc. No. 47 from the Arkansas action: Order dated Sept. 26, 1996.) The Eighth Circuit reversed on October 9, 1996, finding an absence of *in personam* jurisdiction over Maples. *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100 (8th Cir. 1996).

On remand, Burlington moved to transfer the action to this court, but the district court denied that motion (apparently because the district judge construed the language of the Eighth Circuit's opinion as prohibiting transfer) and dismissed the case instead. Burlington appealed the order of dismissal. The Eighth Circuit again reversed, holding: "As we did not address the issue of transfer ... the district court did not lack authority to order transfer based upon our mandate." *Burlington Industries, Inc. v. Maples Industries, Inc.*, 1997 WL 434033 (8th Cir. Aug. 4, 1997).

Upon remand, the district court transferred the Arkansas action to this court pursuant to 28 U.S.C. § 1631. That statute provides that, when a United States District Court

finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

2

Thus, the Arkansas action "shall proceed as if it had been filed in" this court on November 3, 1994.

## B. The Alabama Action

The first action listed above, CV-96-S-3214-NE, in fact was the last to be filed. It was commenced in this court on December 10, 1996: two months after the Eighth Circuit ruled the Eastern District of Arkansas lacked jurisdiction, and one day before the district court's initial denial of the motion to transfer. It will be referred to herein as "the Alabama action." The complaint filed here was substantially similar to the one filed in Arkansas, but also contained claims for damages under the Alabama Trade Secrets Act and Alabama's common law tort of interference with contractual relations.

## C. Motions Addressed Herein

This opinion will address seven motions: (1) Maples' motion to dismiss the Alabama complaint; (2) Burlington's motion to amend the Arkansas complaint; (3) Maples' motion to compel production of documents and entry upon land for inspection; (4) Maples' motion for protective order; (5) Maples' motion to compel answers to interrogatories; (6) Burlington's motion to strike Maples' motion to compel production of documents; and, (7) Burlington's motion to strike Maples' motion to compel answers to interrogatories.[2]

---

[2]Maples filed a "motion for leave of court to file a responsive brief to plaintiff's motion to amend and reply brief relating to defendant's motion to dismiss" on January 27, 1998. This court implicitly granted that motion by order of January 28, 1998, when it directed the parties to submit "any further documents in support of, or opposition to the foregoing motions no later than the close of business on February 4, 1998." (Doc. No. 27.) The order issued

3

## II. BURLINGTON'S MOTION TO AMEND ARKANSAS COMPLAINT

Burlington represents that it will voluntarily dismiss the Alabama action if two conditions are met: (1) its motion to amend the complaint filed in the Arkansas action is granted; and, (2) that amendment is deemed to relate back to the date of filing the Arkansas action. (Plaintiff's response to motion to dismiss the Alabama complaint at 3.[3]) Burlington's proposed amendment seeks to add claims permitted by the Alabama Trade Secrets Act, Alabama Code §§ 8-27-1 *et seq.*, and Alabama's common law tort of intentional interference with business or contractual relations. *See generally*, Roberts & Cusimano, *Alabama Tort Law Handbook* § 26 (2d ed. 1996). The amendment also seeks to clarify

> that Burlington is not seeking as damages its lost profits as a result of Maples' misappropriation of its trade secrets and unfair competition but is seeking recovery of any profits and other benefits conferred upon Maples by the misappropriation, which may be characterized as disgorgement of Maples' profits which were unjustly earned, as well as nominal damages, injunctive relief, attorneys fees' [sic] and exemplary or punitive damages.

(Brief in support of motion to amend at 3.)

In pertinent part, Federal Rule of Civil Procedure 15(a) provides that: "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and

contemporaneously with this memorandum opinion will formally grant that motion.
    Burlington also has filed a motion for partial summary judgment. That motion was not under submission at the time this opinion was drafted, however.

    [3]"If Burlington's motion to amend the Arkansas case is granted and if the amendment, pursuant to 28 U.S.C. § 1631 and Rule 15, Federal Rules of Civil Procedure, relates back to the filing of the Arkansas case in Arkansas, Burlington will dismiss the Alabama case."

4

leave shall be freely given when justice so requires." Leave to amend is within the discretion of the trial court. *Hester v. International Union of Operating Engineers*, 941 F.2d 1574, 1579 (11th Cir. 1991). When ruling on the motion to amend, this court may consider Burlington's "undue delay" or "bad faith or dilatory motive," as well as any "undue prejudice" Maples may suffer by virtue of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

## A.   Undue Delay

Maples asks this court to deny the motion to amend, primarily because of Burlington's "undue delay" in seeking to amend the Arkansas action:

> As Burlington admits, the new cause of action is not based on any new facts and there is no reason why these additional claims could not have been raised earlier. This case has been pending for some three years and Plaintiff should not be allowed to raise a new cause of action at this juncture without substantial explanation.

(Brief in opposition to motion to amend at 3.)   That argument ignores the very authority Maples previously supplied to this court: "In the absence of jurisdiction over the person of a defendant in an action *in personam*, the orders and judgments of the court are void." *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962).[4]  Any order by the Arkansas district granting leave to amend thus would have been void, because that court lacked *in personam*

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

5

jurisdiction over Maples. Burlington accordingly is not guilty of any "undue delay." Rather, it sought leave to amend its complaint in a timely manner from this court: the first forum to properly exercise jurisdiction over the parties.

Indeed, the amended scheduling order entered by this court on December 31, 1997 provides: "No causes of action or parties may be added after February 3, 1998. No defense, additional parties or amendment to the pleadings may be added after March 3, 1998." Burlington moved to amend the Arkansas action on January 12, 1998: 129 days after transfer and 47 days after consolidation. While certainly not prompt, Burlington's amendment in compliance with this court's scheduling order cannot be characterized as unduly delayed.

## B.    Bad Faith

Maples also suggests the motion to amend is made in bad faith: *i.e.*, (1) to delay a decision on Maples' motion to dismiss the Alabama case; and, (2) to bolster Burlington's arguments that financial information related to the alleged trade secrets is not discoverable. (Brief in opposition to motion to amend at 3.) Maples supplies no authority in support of those arguments. This court has discovered only one binding case discussing denial of leave to amend because of "bad faith."

> It is true that [plaintiff] was aware of the facts alleged in the proposed amendment from the beginning. In other circumstances, that awareness of facts and failure to include them in the complaint might give rise to the

6

> inference that the plaintiff was engaging in tactical
> maneuvers to force the court to consider various theories
> seriatim. In such a case, where the movant first
> presents a theory difficult to establish but favorable,
> and only after that fails, a less favorable theory,
> denial of leave to amend on the grounds of bad faith may
> be appropriate. ... Similarly, we think that where the
> failure to include in the complaint a known theory of the
> case arises not from an attempt to gain tactical
> advantages but from a reasonable belief that the theory
> is unnecessary to the case, denial of leave to amend is
> appropriate.

*Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 599 (5th Cir. 1981).

No argument or evidence that Arkansas trade secret law is more favorable than that of Alabama has been presented. Consequently, this court does not believe that Burlington is attempting to gain an advantage by forcing the courts to consider its trade secret claims *seriatim*. Rather, this case is more akin to one "where the failure to include in the complaint a known theory of the case arises not from an attempt to gain tactical advantages but from a reasonable belief that the theory is unnecessary to the case ...." Accordingly, this court finds that Burlington's motion to amend the complaint is not made in bad faith.

## C. Undue Prejudice

Finally, Maples argues that this court "should consider the prejudice to Maples and the futility of Burlington's proposed amendment." (Response to motion to amend at 3.) Maples contends the statute of limitations has run on Burlington's Alabama claims, and that it "would be greatly prejudiced by having to defend this

7

meritless claim." (Id.) This court finds Maples' argument unpersuasive, in part because Maples presents no authority in support of its position, and also because Burlington has attempted by hook and by crook to pursue its Alabama claims.[5]

Maples' argument ignores the purpose of 28 U.S.C. § 1631: the vehicle by which the Arkansas action was transferred to this court. See O'Neal v. Hatfield, 921 F.Supp. 574, 576 (S.D. Ind. 1996):

> Section 1631 provides that the action shall proceed as if it had been filed in the transferee court on the date upon which it was filed in the transferor court, thus allowing plaintiffs to avoid being barred by statutes of limitations from re-filing the suit in the proper jurisdiction. [emphasis supplied]

See also 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 4104 at 406 (2d ed. 1988)("[Section 1631] is designed to protect a plaintiff against either additional expense or the expiration of a relevant statute of limitations in the event that the plaintiff makes an error in trying to select the proper court within the complex federal court system").

There unfortunately is no Eleventh Circuit precedent for this court to follow regarding the application of Alabama law to an action transferred from Arkansas pursuant to 28 U.S.C. § 1631. Even so, the Tenth Circuit Court of Appeals has addressed very similar facts, and found that plaintiffs in situations similar to

---

[5]The crook is the winding course through the stormy seas of two appeals to the Eighth Circuit before the Arkansas action was swept into the safe harbor of this court. The hook is the anchor cast by Burlington to windward, when attempting to separately assert its claims in the Alabama action.

8

those facing Burlington are entitled to pursue claims under the laws of the forum district.

In *Ross v. Colorado Outward Bound School, Inc.*, 822 F.2d 1524 (10th Cir. 1987), the plaintiff was a New York resident whose daughter died in a mountain climbing accident in Colorado. At the time, the daughter (also a New York resident) was a student at the Colorado Outward Bound School.   The girl's mother commenced a wrongful death action against the school in New York state court. The school removed the action to the United States District Court for the Western District of New York on the basis of diversity of citizenship.   The school then filed a motion to dismiss, based on lack of *in personam* jurisdiction.   For reasons that are not well explained, that motion was not ruled on for six years.   Ultimately, the New York District Court found a lack of jurisdiction, but transferred the case to the United States District Court for the District of Colorado.   The Colorado district court dismissed the action on the ground that it was barred by the two year statute of limitations provided for in Colorado's wrongful death act.   To reach that result, the Colorado district court held that the action was not "filed" in Colorado until the date of transfer.

> In its opinion the district court, noting that no formal complaint had ever been filed in a Colorado court, treated the date the case was transferred from the New York district court to the Colorado district court as the filing date under the Colorado Wrongful Death Act.

9

*Id.* at 1526. The Tenth Circuit Court of Appeals reversed, saying in part:

> We hold that [28 U.S.C.] § 1631 requires that the Colorado district court apply Colorado law; that it accept the date on which the action was removed to the New York district court as the filing date in the Colorado district court; and that the action shall proceed in the Colorado district court as not time barred by the two year statute of limitations provision of the Colorado Wrongful Death Act.

*Id.* at 1527. This court finds *Ross* persuasive. Section 1631 requires that this court apply Alabama law,[6] that it accept the date on which the action was filed in the Arkansas district court as the filing date in this court, and that the action proceed in this court as not barred by the two year statute of limitations allegedly applicable to actions founded on the Alabama Trade Secrets Act.

This court accordingly finds no "undue prejudice" in requiring Maples to defend against claims based on Alabama law added by amendment to the complaint originally filed in the Arkansas action.

Maples thus has presented this court with no valid reason to deny leave to amend the Arkansas complaint, and Burlington's motion is due to be granted.

---

[6] Read literally, 28 U.S.C. § 1631 requires this court to view Burlington's complaint to have asserted only Arkansas claims in this court on November 3, 1994. Even in such a situation, however, the "notice pleading" principles of the Federal Rules of Civil Procedure would place Maples on notice that it would be subject to Alabama claims.

10

## D. **Relation Back**

This court further finds that Burlington's amendment relates back to the date of the original Arkansas complaint. As noted above, that result is contemplated by 28 U.S.C. § 1631. Furthermore, it is dictated by Rule 15(c) of the Federal Rules of Civil Procedure.[7] The amendment does not alter the facts of the Arkansas complaint in any way. Rather, it relies upon those facts as a basis to assert claims now, post-transfer, based upon Alabama law. Thus, the Alabama claims "arose out of the conduct, transaction, or occurrence set forth in the original [Arkansas] pleading." *Fed.R.Civ.P.* 15(c)(2).

---

[7] **(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

> (1)  relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2)  the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The delivery or mailing of process to the United States Attorney, or United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of sub-paragraphs (A) and (B) of this paragraph (3) with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

11

Accordingly, this court will act upon the representations of Burlington's counsel[8] and simultaneously dismiss the Alabama action. That decision renders Maples' motion to dismiss moot.

### III. MOTION FOR PROTECTIVE ORDER

Maples has supplied this court with a proposed protective order regarding confidential or proprietary information used in this action.   Burlington agrees that a protective order is necessary, but objects to several provisions of the proposed order. Instead, Burlington wishes to abide by the protective order and supplemental protective order previously entered by the Arkansas district court.

Maples claims the Arkansas orders are not binding, because that court lacked *in personam* jurisdiction.  (Maples' letter brief of Feb. 4, 1998 at 2.)  Burlington argues that "Maples should not be permitted to disavow the stipulations of its counsel in Arkansas without cogent reasons." (Burlington's supplemental brief (Doc. No. 29) at 13.)   Maples only stipulated to the supplemental protective order, however.  (*See* Supplemental Protective Order entered by the United States District Court for the Eastern District of Arkansas, No. PB-C-94-664, at 1.)   The supplemental order placed restrictions on a narrow range of "protected financial information," whereas the original protective order applied to any materials the parties designated as confidential or proprietary. (*Id.*)

---

[8]*See* note 3 *supra.*

12

The proposed protective order presented this court by Maples is an amalgamation of the two orders entered by the Arkansas district court. The synthesis imposes much greater restrictions on disclosure, however.

## A.   The Original Protective Order

The Arkansas court's first protective order was entered on September 6, 1995, and applied to any material which either party designated "as confidential and or proprietary in nature." (Order of Sept. 6, 1995 entered by the United States District Court for the Eastern District of Arkansas, No. PB-C-94-664, at 1.)   Such materials only could be disclosed to the following:

(a)   To attorneys representing any party to this proceeding and employees of such attorneys or law firms with which such attorneys are associated, but only for purposes of the instant proceeding;

(b)   To attorneys consulting with attorneys of record herein, but only for the purpose of the instant proceeding;

(c)   To consultants, advisors, or experts retained by any party, but only for the purposes of the instant proceeding; and

(d)   To the parties, only for the purposes of the instant proceedings.

(*Id.* at 2-3.)

## B.   Supplemental Protective Order

The Arkansas court entered a supplemental protective order on November 20, 1995, which pertained only to the following materials:

(a)   Any such discovery response or material containing detailed projections of costs, production costs,

> commission costs, or fixed costs for any product
> manufactured by either plaintiff or defendant; and
>
> (b) Any such discovery response or material containing
> detailed specific information pertaining to any
> party's marketing costs, commission costs,
> advertising costs, research and development costs,
> volume discounts, rebates, price structuring or
> projections.

(Supplemental protective order of Nov. 20, 1995 entered by the
United States District Court for the Eastern District of Arkansas,
No. PB-C-94-664, at 1.)   Those materials could be disclosed to
"trial counsel for either party and any outside expert retained by
either party for purposes of this litigation." (*Id.* at 2.)   Thus,
the parties were excluded from learning the protected information,
but their counsel were permitted to supply them with "summary
reports of the protected financial information." (*Id.* at 3.)

The supplemental protective order also contained the following
provision:

> The parties may not designate as an outside expert
> any individual who is or has been in the past five years
> regularly retained or employed by either party or is or
> has been affiliated with a firm or group retained or
> employed by either party.

(*Id.* at 2.)

## C. Maples' Proposed Protective Order

### 1. Protected Materials

Maples proposes to protect only the following information from

disclosure:

(a) Any such discovery response or material containing
detailed projections of costs, commission costs, or

14

fixed costs for any product manufactured by either
plaintiff or defendant;

(b) Any such discovery response or material containing
detailed specific information pertaining to any
party's marketing costs, commission costs, volume
discounts, rebates, price structuring or
projections;

(c) Any information regarding the sale of products made
from space dyed yarn (including product sales,
product pricing and customers[)];

(d) Any information concerning any like source of
materials utilized by Maples; and

(e) Any discovery response or material which pertains
to or contains things which are alleged to
constitute plaintiff's trade secrets.

(Proposed protective order at 1-2.)

### 2. Persons entitled to review protected materials

Maples' proposed protective order would exclude the parties

from reviewing protected materials:

None of the Protected Materials shall be revealed to
discussed with, viewed by, or disclosed or divulged to
any person other than trial counsel for either party and
any outside expert retained by either party for purposes
of this litigation.

(Proposed protective order at 2.) Even experts retained to review

the protected materials would be limited by the proposed order:

The parties may not designate as an outside expert
any individual who is or has been in the past five years
regularly retained or employed by either party or is or
has been affiliated with a firm or group retained or
employed by either party.

(*Id.* at 2-3.)

15

## D. **Analysis**

### 1. **Protected materials**

The original protective order entered by the Arkansas court was flexible, because it allowed the parties to designate those materials which would be subject to the order. Maples' proposed order is much more rigid: it specifies the exact types of materials which will be protected. As a result, Burlington alleges "the proposed Protective Order would extend to matters previously produced to Burlington in Arkansas which were not subject to the two protective orders in Arkansas. This material has been shared with various witnesses and representatives of Burlington." (Burlington's supplemental brief at 12.)

This court agrees that the protective orders of the Arkansas court are void, because it lacked *in personam* jurisdiction. Even so, Maples presents no other justification for abandoning the content of those orders. (Maples' letter brief of Feb. 4, 1998 at 2.)

This court finds that the flexible approach adopted by the Arkansas court's original protective order should govern in this action. The parties will be allowed to designate those materials which are subject to protection. Such designation would allow Maples to protect the exact types of materials which are specified in its proposed order, and would also allow Burlington to protect those materials it considers confidential or proprietary.

16

## 2. Persons entitled to review protected materials

Maples' proposed order would not allow disclosure of protected
materials to the parties.  Instead, only their counsel and expert
witnesses could review such materials.  Maples does not explain its
rationale for that restriction in either its motion for protective
order or supplemental letter brief of February 4, 1998.  Thus, this
court cannot find "good cause" for the restriction, and will not
impose it upon Burlington.  *See* Fed.R.Civ.P. 26(c)(court may only
enter protective order for "good cause shown"); *In re Alexander
Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987)(good
cause "signifies a sound basis or legitimate need to take judicial
action").

## 3. Expert Witnesses

Maples' restriction on expert witnesses is a significant one,
because Burlington has litigated the present issue against other
defendants in the past five years.  *See Burlington Industries, Inc.
v. Bobby Vinson & Associates, Inc.*, No. LR-C-93-604 (E.D. Ark.
1993); *Burlington Industries, Inc. v. Palmetto Spinning Corp.*, No.
CA-95-1467-6-3 (D.S.C. 1995); *aff'd*, 76 F.3d 371 (4th Cir. 1996).
The proposed protective order would thus prevent Burlington from
relying upon experts utilized in those prior lawsuits.  Maples, on
the other hand, has not been involved in prior litigation over this
issue, and would not be similarly disadvantaged by the restriction.

17

Therefore, this court will not broadly impose the restriction on expert witnesses.

Instead, the court notes that the parties previously stipulated to a supplemental protective order under which experts retained in the past five years could not be utilized regarding "protected financial materials." (See supplemental protective order of Nov. 20, 1995 entered by the United States District Court of the Eastern District of Arkansas, No. PB-C-94-664, at 1.) Burlington has indicated that it will continue to abide by that restriction.

E.   Conclusion

Upon consideration of Maples' proposed protective order, the prior protective orders of the Arkansas court, and the arguments of the parties, this court finds good cause to issue a protective order to protect both parties from annoyance, embarrassment, oppression, or undue burden or expense. Accordingly, this court will enter an appropriate protective order contemporaneously with this opinion.

## IV.   MOTIONS TO STRIKE

Burlington also filed motions to strike Maples' motion to compel production of documents and Maples' motion to compel answers to interrogatories. Those motions were filed on January 28, 1998. According to Burlington, those motions are due to be struck,

18

because defense counsel failed to comply with certain prerequisites

imposed by *Fed.R.Civ.P.* 37:

> **(a) Motion for Order Compelling Disclosure or Discovery.**
> A party upon reasonable notice to other parties and all
> person affected thereby, may apply for an order
> compelling disclosure or discovery as follows:
>
> . . .
>
> > **(2) Motion.**
> >
> > > **(A)** If a party fails to make a disclosure
> > > required by Rule 26(a), any other party may move
> > > to compel disclosure and for appropriate
> > > sanctions. <u>The motion must include a
> > > certification that the movant has in good faith
> > > conferred or attempted to confer with the party
> > > not making the disclosure in an effort to secure
> > > the disclosure without court action</u>. [emphasis
> > > supplied]

Maples' motions to compel do not contain such a certification.

Counsel for Maples obviously recognized his error upon receipt of

the motions to strike.   Thus, he subsequently filed a "Rule 37

Certification" which makes the following statements:

> COMES NOW Defendant Maples Industries, Inc.
> ("Maples") and certifies that its counsel, J.R. Brooks,
> held a telephone conference with Julian Butler, counsel
> for Plaintiff Burlington Industries, Inc. ("Burlington")
> on <u>January 28, 1998</u> and was unable to satisfactorily
> resolve the matters raised in Maples' pending discovery
> motions.
>
> 1.   On <u>January 22, 1998</u>, Maples filed a Motion to
> Compel Production of Documents, and on <u>January 27, 1998</u>,
> Maples filed a Motion to Compel Answers to
> Interrogatories.   These motions sought a resolution to
> certain discovery disputes which have permeated this
> litigation for years, and which Maples' counsel believed
> could not be resolved without court intervention.
>
> 2.   During the January 28 telephone conference,
> Burlington's counsel confirmed that Burlington will

produce no financial information relating to its alleged trade secrets.

3. Burlington also refuses to provide any discovery Maples may seek in an attempt to "go behind" or contradict a finding by the United States District Court for the Eastern District of Arkansas, that Burlington's alleged trade secrets are protectible under the Arkansas Trade Secrets Act. That Arkansas litigation was between Burlington and other parties, and did not involve Maples or the Alabama Trade Secrets Act.

4. Burlington also asserts that it has satisfied its obligation to respond to interrogatories by listing numerous transcripts, depositions, and memorandum opinions from the above-mentioned Arkansas litigation, without specifying which portions of those documents allegedly answer Maples' interrogatories.

(Rule 37 Certification at 1-2 (emphasis supplied).)

That certification is deficient in two respects. First, it was not included with the motions as required by Rule 37, and counsel's alleged attempts to resolve the dispute obviously occurred _after_ the motions were filed. Second, the certification does not establish that the January 28, 1998 telephone call was made as part of a "good faith" effort to resolve the discovery dispute. _See_ Rule 37(a)(2)(A).

Failure to comply with Rule 37's certification requirement is a sufficient basis to deny a motion to compel. _Prescient Partners, L.P., v. Fieldcrest Cannon, Inc._, No. 96 Civ. 7590, 1998 WL 67672 (S.D.N.Y. Feb. 18, 1998); _Display Solutions v. Daktronics, Inc._, 983 F.Supp. 1476 (N.D. Ga. 1997). This court thus finds that plaintiff's motions to strike are due to be granted.

20

Moreover, defense counsel are directed to refrain from filing renewed motions to compel (with appropriate Rule 37 certifications) until this court resolves the pending motion for partial summary judgment. The issues underlying that motion are the same as those which form the basis for Burlington's objections to Maples' discovery requests: *i.e.*, Burlington moves for summary judgment because it believes its "Spectra" space dyeing machine is a trade secret, and likewise objects to Maples' discovery as invasive upon that trade secret. If, after resolution of the motion for partial summary judgment, Maples believes it is entitled to the discovery, it should confer in good faith with Burlington before filing a motion to compel.

### V.   CONCLUSION

An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the _27ᵗʰ_ day of March, 1998.

United States District Judge